IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AXIS SURPLUS INSURANCE COMPANY, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 3:21-cv-917 |
| vs. | § § § | ACTION FOR DECLARATORY RELIEF |
| HOLT LUNSFORD COMMERCIAL, INC. and WF TOWER-DALLAS LLC, | § § § | |
| *Defendant.* | | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
<u>**DECLARATORY JUDGMENT**</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff AXIS Surplus Insurance Company ("AXIS") files this Original Complaint for Declaratory Judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 and, in support, respectfully shows the Court as follows:

**I. <u>THE PARTIES</u>**

1.   Plaintiff AXIS is an insurance company incorporated and formed under the laws of Illinois, with its principal place of business at 10000 Avalon Boulevard, Suite 200, Alpharetta, Georgia 30009.

2.   Defendants Holt Lunsford Commercial, Inc. and WF Tower-Dallas LLC (collectively, "Holt") are the named insureds under the insurance policy at issue. To AXIS's knowledge, both entities are citizens of either Texas or New Jersey. On information and belief, Holt Lunsford Commercial, Inc. was incorporated in Texas and has offices exclusively in Texas. On information and belief, WF Tower-Dallas LLC is a limited liability company that was formed in Texas and whose sole member is Charles Aque. Upon information and belief, Mr. Aque is either

a citizen of Texas or a citizen of New Jersey. To AXIS's knowledge, WF Tower-Dallas LLC has no other members.

## II. JURISDICTION

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201 because complete diversity exists between the parties, the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and AXIS seeks declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*, the Federal Declaratory Judgment statute.

4. AXIS issued the insurance policy made the subject of this lawsuit and has more than $75,000 at issue in this litigation, and a controversy exists regarding the duties, rights, and obligations, if any, under the subject insurance policy.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this district. Additionally, AXIS issued the insurance policy to Holt Lunsford Commercial, Inc., whose address in the policy is 5055 Keller Springs Road, Suite 300, Addison, TX 75001 in Dallas County.

## III. INTRODUCTION AND BACKGROUND

6. Holt are the Named Insureds under a commercial property policy subscribed to by AXIS, Policy No. EAF757219-17 (the "Policy"), which provides property damage coverage for the following property: 1200 E. Copeland Road, Arlington, Texas 76011 ("Property").

7. The Policy has effective dates of June 1, 2017 to June 1, 2018.

8. This declaratory judgment action arises from Holt's insurance claim for property damage from a pipe that allegedly broke in December 2017.

9. The Policy has a $10,000,000.00 limit of liability with various sublimits, exclusions, and conditions. The Policy has deductible of $10,000.00.

10. On or about January 27, 2020, Holt made a claim with AXIS regarding damage to the Property. In its loss notice, Holt claimed, that "[a] pipe broke under the building and over time the building has started to move and now we are having structural issues on the 1st floor." Holt informed AXIS that the pipe break at issue occurred over two years prior on December 13, 2017.

11. AXIS promptly retained Sedgwick, an independent adjusting company, to assist with the investigation and adjustment of Holt's claim. On January 30, 2020, Sedgwick's and Holt's representatives inspected the Property.

12. During the claim adjustment, AXIS also retained engineers at Nelson Forensics, LLC ("Nelson") to investigate the loss. On March 16, 2020, Nelson inspected the Property. Nelson found that the building's foundation system had experienced differential movement. In Nelson's professional engineering opinion, the "desiccation of the soils by the root systems of the mature trees, and previously removed trees/vegetation, at the site has contributed to differential movement of the structure's slab-on-grade." Further, Nelson opined "that the failure of the water line below the slab at the west side of the structure resulted in displacement/'wash-out' of the leveling pad soil, contributing to differential movement of the slab-on-grade in proximity to the leak location."

13. On or about February 13, 2020, Sedgwick, on behalf of AXIS, sent a letter to Holt reserving AXIS's rights under the Policy and requesting additional information.

14. On May 4, 2020, Holt was advised that there was no coverage under the Policy.

15. On or about February 24, 2021, Holt issued a demand letter to AXIS alleging that the AXIS Policy covered the loss and demanding that AXIS pay to replace and repair the damages.

16. AXIS now files this declaratory judgment action for a determination concerning whether Holt is entitled to coverage for property damage for its claimed loss and/or the extent to which payment may be owed.

## IV. SUMMARY OF COVERAGE ISSUES

17. AXIS seeks a declaration as to the following coverage issues:

   a. Whether the claimed damage to the paved surfaces, the building foundation, land, interior damages, and underground pipes is damage to property covered under the Policy under the provisions discussed below;

   b. Whether the claimed property damage constitutes covered losses or damage under the Policy;

   c. Whether the Policy excludes coverage for the claimed property damages, including claimed damage arising out of earth movement, wear and tear, corrosion and deterioration, settling, cracking, shrinking, or expansion; continuous or repeated seepage or leakage of water; faulty, inadequate or defective planning, zoning, development, surveying, siting, faulty, inadequate, or defective workmanship, repair, construction, renovation, or remodeling, grading, compaction, faulty, inadequate, or defective materials used in repair, construction, renovation, or remodeling and/or faulty, inadequate, or defective maintenance;

   d. Whether Holt failed to comply with conditions for coverage, including providing adequate and timely notice;

   e. Whether any payment is owed by AXIS to the Holt under the Policy.

## V. THE INSURANCE POLICY

18. The terms, conditions, definitions, exclusions, and other provisions of the Policy are incorporated herein by reference.

19. All conditions precedent to filing this lawsuit have occurred.

20. The Policy's **PROPERTY DAMAGE COVERAGE** form does not provide coverage for paved services, foundations, land, and underground pipes:

\* \* \*

**2. Property Not Covered**

Unless provided in the extensions of coverage, Covered Property does not include:

\* \* \*

   **d.** Bridges, roadways, walks, patios or other paved surfaces;

\* \* \*

    **f.** The cost of excavations, grading, backfilling or filling;

    **g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

        (1) The lowest basement floor; or

        (2) The surface of the ground, if there is no basement;

    **h.** Land (including land on which the property is located), water, growing crops or lawns;

\* \* \*

    **m.** Underground pipes, flues or drains;

\* \* \*

21.    The Policy's **PROPERTY DAMAGE COVERAGE** form also excludes certain perils causing loss, including all earth movement and flooding:

\* \* \*

**B. Exclusions**

    **1. Except as may be provided as an extension of coverage**, we will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\* \* \*

        **b. Earth Movement**
            **(1)** all earth movement (whether occurring naturally or not) including, but not limited to, earthquake, landslide, subsidence and volcanic eruption.
            **(2)** collapse, cracking, shrinking, bulging, expansion, shifting, rising, settling, sinking, lateral or other movement, or other kinds of loss or damage to property which would not have occurred but for an event as described in 1. above.

\* \* \*

        **g. Flood**
            **(1)** Flood, storm surge, surface water, mudslide or mud flow, waves, tidal water or tidal waves, overflow of streams, lakes, reservoirs, canals, drainage ditches, retention ponds or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not (all whether or not naturally occurring),

      **(1)** Water that backs up or overflows from a sewer, drain or sump;

      **(2)** Water under the ground surface pressing on, or flowing or seeping through:

      **a.** Foundations, walls, floors or paved surfaces;

      **b.** Basements, whether paved or not; or

      **c.** Doors, windows or other openings, or

\* \* \*

  **(4)** Damage to, destruction, failure, or overflowing of levees, dams, dikes, floodgates and other similar works.

\* \* \*

22.    The Policy's **PROPERTY DAMAGE COVERAGE** also excludes certain damage caused by wear and tear, corrosion, decay, deterioration, settlement, shrinkage or expansion, continuous or repeated seepage or leakage of water, or neglect on behalf of the insured:

\* \* \*

**3.** We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

  **d.** **(1)** Wear and tear;

      **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

      **(3)** Settling, cracking, shrinking or expansion;

\* \* \*

  **f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

\* \* \*

  **l.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

\* \* \*

23.    The Policy's **PROPERTY DAMAGE COVERAGE** also excludes loss or damage arising out of the following faulty, inadequate or defective actions or materials:

\* \* \*

4. We will not pay for loss or damage caused by or resulting from any of the following, 4.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\* \* \*

   **c.** Faulty, inadequate or defective:

      **(1)** Planning, zoning, development, surveying, siting;

      **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      **(3)** Materials used in repair, construction, renovation or remodeling; or

      **(4)** Maintenance;

   of part or all of any property on or off an "insured location".

\* \* \*

24. The Policy's **GENERAL CONDITIONS** form also imposes certain duties on the insured in the event of a loss or damage:

\* \* \*

**C. Loss Conditions**

\* \* \*

**3. Duties In The Event Of Loss or Damage**

   **a.** You must see that the following are done in the event of loss or damage to Covered Property:

\* \* \*

      **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

      **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

      **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of

the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

\* \* \*

**(9)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

\* \* \*

25. AXIS contends that one or more of the terms, conditions, and exclusions cited above applies to define, exclude, or limit coverage and thus applies to limit or preclude damages payable under the Policy in this matter.

26. Specifically, AXIS contends that in addition the alleged damage to the Property's foundation, paved surfaces, and pipes is not covered property under the Policy. Further, AXIS contends that the Policy's exclusions for loss resulting from earth movement, flooding, wear and tear, deterioration, settling cracking, shrinking or expansion, seepage or leakage of water, neglect of the insured to use all reasonable means to save and preserve the property, and faulty siting, repair, construction, grading, compaction, and/or settlement, separately exclude any coverage for this claim.

## VI.   CLAIM FOR DECLARATORY RELIEF

27. AXIS hereby incorporates by reference the preceding paragraphs.

28. Pursuant to Rule 57 and 28 U.S.C. § 2201, AXIS seeks a declaration including, but not limited to, the following:

   a. Whether the claimed property damage constitutes covered losses under the Policy under the provisions discussed above;

   b. Whether the Policy excludes coverage for the claimed property damage under the provisions discussed above, including claims for damage to or losses arising from:

    1) earth movement;

    2) neglect and failure to use all reasonable means to save and preserve the property from further damage;

    3) wear and tear;

    4) rust or other corrosion, decay, deterioration;

    5) settling, cracking, shrinking, or expansion;

    6) continuous or repeated seepage or leakage of water; and/or

    7) faulty, inadequate or defective planning, zoning, development, surveying, siting;

    8) faulty, inadequate, or defective workmanship, repair, construction, renovation, or remodeling, grading, compaction;

    9) faulty, inadequate, or defective materials used in repair, construction, renovation, or remodeling;

    10) faulty, inadequate, or defective maintenance.

  c. Whether Holt failed to comply with conditions for coverage, including providing adequately timely notice;

  d. Whether any payment is owed by AXIS to the Holt under the Policy.

29. AXIS reserves the right to assert additional Policy provisions as the case develops, as there may be other provisions that apply of which AXIS has no present knowledge. Therefore, AXIS requests that the Court make such other and further declarations as may be appropriate.

## VII.  PRAYER

30. Accordingly, AXIS prays that the Holt be summoned to appear and answer herein, and that upon trial hereof, the Court declare whether AXIS must pay Holt for all covered damages owed for this loss; whether AXIS has any further duties in this matter; and that AXIS be awarded its fees and such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

SHACKELFORD, BOWEN, MCKINLEY & NORTON, LLP

By: */s/ Bruce R. Wilkin*
    **Bruce R. Wilkin** – Attorney in Charge
    Texas Bar No. 24053549
    bwilkin@shackelford.law
    717 Texas Avenue, 27th Floor
    Houston, Texas 77002
    Phone: (832) 415-1801
    Fax: (832) 565-9030

    Conor G. Bateman
    Texas Bar No. 24036198
    cbateman@shackelford.law
    9201 N. Central Expressway, Fourth Floor
    Dallas, Texas 75231
    Phone: (214) 780-1400
    Fax: (214) 780-1401

ATTORNEYS FOR PLAINTIFF
AXIS SURPLUS INSURANCE COMPANY