UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AXIS SURPLUS INSURANCE COMPANY, | § § § | |
| PLAINTIFF, | § § | |
| V. | § § | CIVIL ACTION NO 3:21-CV-00917-S |
| HOLT LUNSFORD COMMERCIAL, INC. AND WF TOWER-DALLAS, LLC, | § § § | **JURY TRIAL DEMANDED** |
| DEFENDANTS. | § § | |

## DEFENDANTS' ORIGINAL ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIM

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Defendants/Counter-Plaintiffs Holt Lunsford Commercial, Inc. and WF Tower-Dallas, LLC ("Defendants/Counter-Plaintiffs"), and file this, their Original Answer to Plaintiff's Complaint for Declaratory Judgment and their Counterclaim against Plaintiff, and for same, would show unto the Court as follows:

### I.
### PARTIES

1.      Defendants/Counter-Plaintiffs lacks sufficient information upon which to admit or deny the averments in Paragraph 1.

2.      Defendants/Counter-Plaintiffs admit the averments contained in Paragraph 2 of Plaintiff's Complaint for Declaratory Judgment. Defendants/Counter-Plaintiffs' counsel have agreed to accept service of this lawsuit.

### II.
### JURISDICTION

3.      Defendants/Counter-Plaintiffs admit based on the parties listed in the

litigation at this time, complete diversity exists and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs as set forth in Paragraph 3 of Plaintiff's Complaint for Declaratory Judgment; however, Defendants/Counter-Plaintiffs may add additional parties which may defeat diversity jurisdiction.

4.     Defendants/Counter-Plaintiffs admit the averments contained in Paragraph 4 of Plaintiff's Complaint for Declaratory Judgment.

5.     Defendants/Counter-Plaintiffs admit the averments contained in Paragraph 5 of Plaintiff's Complaint for Declaratory Judgment.

### III.
### INTRODUCTION AND BACKGROUND

6.     Defendants/Counter-Plaintiffs admit that AXIS issued a commercial insurance policy EAF757219-17, to Defendants/Counter-Plaintiffs (the "Policy"), and that the policy covers the property located at 1200 E. Copeland Road, Arlington, Texas 76011.

7.     Defendants/Counter-Plaintiffs admit that the Policy have effective dates of June 1, 2017 to June 1, 2018.

8.     Defendants/Counter-Plaintiffs admit the averments contained in Paragraph 8 of Plaintiff's Complaint.

9.     Defendants/Counter-Plaintiffs deny that the deductible is $10,000.00. Defendants/Counter-Plaintiffs deny that the limit of liability is $10,000,000.00.  At this time, Defendant is without sufficient information and belief to admit or deny the vague statement, "with various sublimits, exclusions, and conditions."

10.     Defendants/Counter-Plaintiffs admit a claim was filed with AXIS regarding damages to the Property. The remainder of the averments in this paragraph are denied.

11.     Defendants/Counter-Plaintiffs admit an inspection occurred of the Property,

and based on information and belief the inspection occurred on or about January 30, 2020. Defendants/Counter-Plaintiffs are without sufficient information and belief to admit or deny whether AXIS retained Sedgwick or the scope of the retention as set forth in Paragraph 11 of Plaintiff's Complaint.

12.     Defendants/Counter-Plaintiffs admit that Nelson Forensics, LLC ("Nelson") wrote a report that purports to be based on an inspection occurring on March 16, 2020, as set forth in Paragraph 12 of Plaintiff's Complaint. Any other averments are denied. Defendants/Counter-Plaintiffs deny the accuracy of any report generated by Nelson.

13.     Defendants/Counter-Plaintiffs deny the averments in Paragraph 13 of Plaintiff's Complaint.

14.     Defendants/Counter-Plaintiffs admit that Richard Swink with Sedgwick wrote a letter to Plaintiff dated May 4, 2020 that stated, in part, that there is no coverage under the Policy.

15.     Defendants/Counter-Plaintiffs admits the averments in Paragraph 15 of Plaintiff's Complaint.

16.     Defendants/Counter-Plaintiffs admit AXIS has filed a declaratory judgment action as set forth in Paragraph 16 of Plaintiff's Complaint.

## IV.
## SUMMARY OF COVERAGE ISSUES

17.     Paragraph 17 of Plaintiff's Complaint does not contain an averment against Defendants/Counter-Plaintiffs and does not require a response. However, Defendants/Counter-Plaintiffs admit that coverage exists under the Policy to pay for Defendants/Counter-Plaintiffs' damages to the Property. Holt denies any claimed failure to comply with conditions for coverage.

**V.**
**THE INSURANCE POLICY**

18.     Paragraph 18 of Plaintiff's Complaint does not contain an averment requiring a response.

19.     Defendants/Counter-Plaintiffs deny Paragraph 19 of Plaintiff's Complaint.

20.     Defendants/Counter-Plaintiffs deny Paragraph 20 of Plaintiff's Complaint.

21.     Defendants/Counter-Plaintiffs deny Paragraph 21 of Plaintiff's Complaint.

22.     Defendants/Counter-Plaintiffs deny Paragraph 22 of Plaintiff's Complaint.

23.     Defendants/Counter-Plaintiffs deny Paragraph 23 of Plaintiff's Complaint.

24.     Defendants/Counter-Plaintiffs deny Paragraph 24 of Plaintiff's Complaint.

25.     Defendants/Counter-Plaintiffs deny Paragraph 25 of Plaintiff's Complaint.

26.     Defendants/Counter-Plaintiffs deny Paragraph 26 of Plaintiff's Complaint.

**VI.**
**CLAIM FOR DECLARATORY RELIEF**

27.     Paragraph 27 of Plaintiff's Complaint does not contain an averment requiring a response.

28.     Paragraph 28 of Plaintiff's Complaint does not require a response. However, Defendants/Counter-Plaintiffs admit that coverage exists under the Policy to pay for Defendants/Counter-Plaintiffs' damages to the Property.  Defendants/Counter-Plaintiffs asserted there is not exclusion applicable to their claim, the exclusions asserted by Plaintiff are not appliable, Hold complied with conditions of coverage and payment is due Defendants/Counter-Plaintiffs from the Plaintiff.

29.     Defendants/Counter-Plaintiffs deny Paragraph 29 of Plaintiff's Complaint.

30.     Defendants/Counter-Plaintiffs deny all relief sought in Paragraph 30 of

Plaintiff's Complaint.

## VII.
## AFFIRMATIVE DEFENSES
## WAIVER AND ESTOPPEL

31.     Defendants/Counter-Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1-30 of Defendant's Answer to Plaintiff's Complaint for Declaratory Judgment and Counterclaim as if fully set forth herein.

32.     Defendants/Counter-Plaintiffs asserts by way of affirmative defense that AXIS has waived and should be estopped from denying coverage in this matter for the claim and damages. In this respect, Defendants/Counter-Plaintiffs asserts that representatives of AXIS communicated to representatives of Defendants/Counter-Plaintiffs before AXIS issued any reservation of rights on a claim denial that AXIS would in fact accept the claim.

## VIII.
## DEFENDANTS HAVE COMPLIED WITH TERMS AND
## CONDITIONS AND ALL CONDITIONS PRECEDENT

33.     Pleading further, Defendants would respectfully show the true facts of this matter indicate Defendants fully complied with all the terms and conditions of the insurance policy at issue. Defendants/Counter-Plaintiffs provided AXIS with sufficient information to adjust the claim and fulfill all conditions precedent to request payment of the claim. Plaintiff has not been prejudiced by the conduct of Defendants.

## IX.
## DEFENDANTS' COUNTERCLAIM

34.     Defendants/Counter-Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1-33 of Defendants' Answer to Plaintiff's Complaint for Declaratory Judgment and Counterclaim as if fully set forth herein.

35.     This counterclaim arises out of the transaction or occurrence that is the subject matter of the Defendants' claim, and does not require adding another party over whom the court cannot acquire jurisdiction. However, Defendants/Counter-Plaintiffs reserve the right to add additional parties to this litigation as justice may require .

36.     On December 13, 2017, there was a break in a six-inch water line that services the WF Tower property. Due to the break, water ran for approximately seven to eight hours before the break was reported and water service was turned off. As a result of the running water, soil was displaced from below the slab and observed in the adjacent parking lot and the parking lot of the apartment complex to the west of the WR Tower property. There was no interior distress at the WF Tower property prior to the plumbing leak.

37.     On March 16, 2020, Shaveta G. Good, P.E., Kaitlyn J. Marshall, E.I.T. and Peter E. Havesebrook, E.I.T. of Nelson Forensics, LLC conducted an investigation to determine the extent of distress, if any, related to the reported below-slab pressurized water pipe failure that occurred on December 13, 2017. A "Foundation Distress Evaluation Report" was completed by Nelson Forensics, LLC on April 3, 2020. The report included description of the building interior distress, ground penetrating radar and floor relative elevation surveys. Nelson personnel observed the following:

1.  Separations at wall to ceiling interfaces in hallways that have been previously been repaired.

2.  Separations in drop-panel ceiling tiles in multiple rooms.

3.  Differential floor movements at building columns.

4.  Horizontal, vertical and diagonal wall separations/fractures typically at door

openings throughout first floor.  Evidence of previous repairs at some
locations.

5.  Separations between floor and baseboards.

6.  Changes in floor elevations.

7.  Cementitious levelling courses.

8.  Ground penetrating radar identified what appear to be voids under the floor
slab in Room 121.

38.     Nelson personnel performed various investigative tests to determine the
cause of the observed issues.  Nelson determined the slab-on-grade foundation system
at the WR Tower property had experienced differential movement. Yet, the foundation
piers have no damage. Nelson opined that desiccation of the soils by the root systems of
the mature trees, and previously removed trees/vegetation, at the WR Tower property
contributed to differential movement of the structure's slab-on grade. Yet, there were no
trees in this area. Nelson also determined that the failure of the water line below the slab
at the west side of the structure resulted in displacement/"wash-out" of the leveling pad
soil, contributing to differential movement of the slab-on-grade in proximity to the leak
location. Nelson gave these opinions without sufficient inspection or testing to give such
opinions. AXIS knew the opinions were given without sufficient reasonable inspection and
testing. AXIS wrongfully and in bad faith relied on such opinions in unreasonably denying
the claim. This was an improper outcome-oriented investigation.

39.     On May 4, 2020, WF Tower's claim for damages was denied despite this
being a covered loss.

40.     As a result of the denial, WF Tower requested Joseph K. Waugh, M.S., E.I.T

and Tim G. Abrams, P.E. of Terracon Consultants, Inc. review the prior reports and inspect the WF Tower property. Messrs. Waugh and Abrams prepared a report dated September 24, 2020, that provided their assessment of the potential causes of the on-going building interior movements and provided information and geotechnical engineering recommendations regarding:

- Pattern of floor movements

- Potential Causes of the Floor Movements

- Soil conditions

- Recommendations to reduce floor movements.

41.　　Messrs. Waugh and Abrams made recommendations in order to arrest future movements beneath the building area. As part of their investigation they concluded a significant contributing and precipitating cause of problems at the building were the covered loss of December 13, 2017.

42.　　David Cumming and David Goodson of RLG, prepared a proposal for an investigation and repairs to the building structure. The work proposed is to be completed in two phases: Phase 1 will include an investigation and preparation of schematic repair schemes; and Phase 2 which will complete the design of one repair scheme and follow it through construction. The total estimate for repairs to the WF Tower property is $2,778,306. In addition, WF Tower have paid $50,622.08 for temporary repairs, investigation and engineering services to determine the cause of the damage. WF Tower will continue to suffer a loss of business or leasing interruption of over $120,000. Defendants/Counter-Plaintiffs sought property damage benefit under the AXIS policy, which AXIS refused to pay.　Rather than properly pay the insurance benefit

Defendants/Counter-Plaintiffs are entitled to receive under the policy, without reasonable basis, AXIS apparently attempted to circumnavigate its obligation to timely pay insurance benefit under the Policy.   As a result of this failure to pay policy benefits Defendants/Counter-Plaintiffs have incurred significant financial loss.

43.   As detailed in the above paragraphs, AXIS and its agents and adjusters did not properly pay Defendants/Counter-Plaintiffs' claim and did not provide full coverage for the damages sustained by the Defendants/Counter-Plaintiffs. Additionally, AXIS continues to delay the payment of the damages to Defendants/Counter-Plaintiffs Property. As such, Defendants/Counter-Plaintiffs have not been paid for their damages to their property.

44.   AXIS claims exclusions as follows, which do not apply to the damage at hand:

B. Exclusions
1. Except as may be provided as an extension of coverage, we will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
* * *
b.  Earth Movement
(1) all earth movement (whether occurring naturally or not) including, but not limited to, earthquake, landslide, subsidence and volcanic eruption.
(2) collapse, cracking, shrinking, bulging, expansion, shifting, rising, settling, sinking, lateral or other movement, or other kinds of loss or damage to property which would not have occurred but for an event as described in 1. above.
* * *

None of the engineers or investigation personnel who have inspected the Defendants/Counter-Plaintiffs' Property have attributed the damage to Earth Movement (such as earthquake, landslide, subsidence and volcanic eruption) or the collapse,

cracking, shrinking, bulging, expansion, shifting, rising, settling, sinking, lateral or other movement of the ground as a result of Earth Movement. Instead, as stated above, AXIS's engineers determined the slab-on-grade foundation system at the WR Tower property had experienced differential movement. Yet, the foundation piers have no damage. AXIS's engineers also opined that desiccation of the soils by the root systems of the mature trees, and previously removed trees/vegetation, at the WR Tower property contributed to differential movement of the structure's slab-on grade. Yet, there were no trees in this area.

Likewise, an exclusion for "Flood" does not apply.

> g.  Flood
> (1) Flood, storm surge, surface water, mudslide or mud flow, waves, tidal water or tidal waves, overflow of streams, lakes, reservoirs, canals, drainage ditches, retention ponds or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not (all whether or not naturally occurring),
> (1) Water that backs up or overflows from a sewer, drain or sump;
> (2) Water under the ground surface pressing on, or flowing or seeping through:
> > a.  Foundations, walls, floors or paved surfaces;
> > b.  Basements, whether paved or not; or
> > c.  Doors, windows or other openings, or
> > > * * *

None of the engineers or investigation personnel who have inspected the Defendants/Counter-Plaintiffs' Property have attributed the damage to Flood (such as flood, storm surge, surface water, mudslide or mud flow, waves, tidal water or tidal waves, overflow of streams, lakes, reservoirs, canals, drainage ditches, retention ponds or other bodies of water) or water that has backed up or overflown from a sewer, drain or sump; or water under the ground surface pressing on, or flowing or seeping through the foundations, walls, floors or paved surfaces; basements; or doors, windows or other

openings of the Defendants/Counter-Plaintiffs' Property. Instead, as stated above, AXIS's engineers, without sufficient inspection or testing, suggested that the failure of the water line below the slab at the west side of the structure resulted in displacement/"wash-out" of the leveling pad soil, contributing to differential movement of the slab-on-grade in proximity to the leak location.

There is no valid applicable exclusion related to levees.

> (4) Damage to, destruction, failure, or overflowing of levees, dams, dikes, floodgates and other similar works.
> * * *

None of the engineers or investigation personnel who have inspected the Defendants/Counter-Plaintiffs' Property have attributed the damage to destruction, failure, or overflowing of levees, dams, dikes, floodgates and other similar works. Instead, as stated above, AXIS's engineers, without sufficient inspection or testing, suggested that the failure of the water line below the slab at the west side of the structure resulted in displacement/"wash-out" of the leveling pad soil, contributing to differential movement of the slab-on-grade in proximity to the leak location.

The carrier unreasonably asserted:

> Additionally, AXIS's investigation revealed that the soil underneath the Property was not adequately repaired after the water break. Further, Nelson noted in its report that tree roots cause "shrinkage/settlement of the clay subgrade." The Policy's PROPERTY DAMAGE COVERAGE form excludes certain damage caused by wear and tear, corrosion, decay, deterioration, settlement, shrinkage or expansion, continuous or repeated seepage or leakage of water, or neglect on behalf of the insured:
> * * *
> > 3. We will not pay for loss or damage caused by or resulting from any of the following:
> > * * *
> > d. (1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
(3) Settling, cracking, shrinking or expansion;
* * *

f.   Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.
* * *

l.   Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.
* * *

AXIS's own statement does not attribute the damage to the Defendants/Counter-Plaintiffs' Property to wear and tear; rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself; settling, cracking, shrinking or expansion; … continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more; or neglect of the insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

The carrier also wrongfully asserted:

The Policy's PROPERTY DAMAGE COVERAGE form also excludes loss or damage arising out of the following faulty, inadequate or defective actions or materials:
* * *

4. We will not pay for loss or damage caused by or resulting from any of the following, 4.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
* * *

c. Faulty, inadequate or defective:
(1)   Planning, zoning, development, surveying, siting;
(2)   Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3)   Materials used in repair, construction, renovation or remodeling; or
(4)   Maintenance;
of part or all of any property on or off an "insured location".
* * *

AXIS's own statement/exclusion affords coverage.  ASIX has done no more than conduct an outcome-oriented investigation with the intent of wrongfully denying coverage.

45.     AXIS and its agents and adjusters failed to perform their contractual duties to adequately compensate Defendants/Counter-Plaintiffs under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Defendants/Counter-Plaintiffs.  AXIS and its agents and adjusters' conduct constitutes a breach of the insurance contract between AXIS and Defendants/Counter-Plaintiffs.

46.     After initially representing that the claim for damage to the Property would be covered and paid under the Policy, AXIS and its agents and adjusters misrepresented to Defendants/Counter-Plaintiffs that the damage to Defendants/Counter-Plaintiffs' Property was not covered under the Policy, even though the damage was caused by a covered occurrence. AXIS and its agents and adjusters' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a)(1).

47.     AXIS and its agents and adjusters failed to make an attempt to settle Defendants/Counter-Plaintiffs' claim in a fair manner, although they were aware of their liability to Defendants/Counter-Plaintiffs under the Policy. AXIS and its agents and adjusters' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a)(2)(A).

48.     AXIS and its agents and adjusters failed to explain to Defendants/Counter-

Plaintiffs the reasons for their denial of Defendants/Counter-Plaintiffs' claim. Specifically, AXIS and its agents and adjusters failed to offer Defendants/Counter-Plaintiffs adequate compensation, without any explanation why full payment was not being made. Furthermore, AXIS and its agents and adjusters did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Defendants/Counter-Plaintiffs' claim. AXIS and its agents and adjusters' conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices, Tex. Ins. Code §541.060(a)(3).

49.     AXIS and its agents and adjusters failed to affirm or deny coverage of Defendants/Counter-Plaintiffs' claim within a reasonable time. Specifically, Defendants/Counter-Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from AXIS. AXIS and its agents and adjusters' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a)(4). Defendants/Counter-Plaintiffs reasonably relied on Plaintiff/Counter-Defendant's initial representation of coverage.

50.     AXIS and its agents and adjusters refused to fully compensate Defendants/Counter-Plaintiffs, under the terms of the Policy, even though AXIS failed to conduct a reasonable investigation. Specifically, AXIS and its agents and adjusters performed an outcome-orientated investigation of Defendants/Counter-Plaintiffs' claim, which resulted in a biased, unfair and inequitable evaluation of Defendants/Counter-Plaintiffs' losses on the property. AXIS and its agents and adjusters' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code

§541.060(a)(7).

51.    AXIS and its agents and adjusters failed to meet their obligations under the Texas Insurance Code regarding timely acknowledging Defendants/Counter-Plaintiffs' claim, beginning an investigation of Defendants/Counter-Plaintiffs' claim and requesting all information reasonably necessary to investigate Defendants/Counter-Plaintiffs' claim within the statutorily mandated time of receiving notice of Defendants/Counter-Plaintiffs' claim. AXIS and its agents and adjusters' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.055.

52.    AXIS and its agents and adjusters failed to accept or deny Defendants/Counter-Plaintiffs' full and entire claim within statutorily mandated time of receiving all necessary information. AXIS and its agents and adjusters' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.056.

53.    AXIS and its agents and adjusters failed to meet their obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, it has delayed full payment of Defendants/Counter-Plaintiffs' claim longer than allowed and, to date continue to withhold policy payment. AXIS and its agents and adjusters' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.058.

54.    Plaintiff violated these and other provisions of the Texas Insurance Code by commission of the acts complained of herein. Plaintiff has a pattern and practice of violating the Texas Insurance Code through the commission of the conduct described herein. Plaintiff has made institutional decisions to promote profits rather than paying

legitimate claims like Defendants/Counter-Plaintiffs' claim.

55.     From and after the time Defendants/Counter-Plaintiffs' claim was presented to AXIS and its agents and adjusters, the liability of AXIS to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, AXIS and its agents and adjusters have refused to pay Defendants/Counter-Plaintiffs in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment. AXIS and its agents and adjusters' conduct constitutes a breach of the common law of good faith and fair dealing.

56.     AXIS and its agents and adjusters knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Defendants/Counter-Plaintiffs.

57.     AXIS has forced Counter-Plaintiff into litigation to defend meritless claims.

58.     As a result of AXIS and its agents and adjusters' wrongful acts and omissions, Defendants/Counter-Plaintiffs were forced to retain the professional services of the attorney and law firm who are representing them with respect to these causes of action.

59.     As a result of the foregoing conduct, Defendants/Counter-Plaintiffs would respectfully show as follows:

**X.**
**COUNTERCLAIM CAUSES OF ACTION**

60.     Defendants/Counter-Plaintiffs re-alleges and incorporates by reference the allegations contained in Paragraphs 1-59 of Defendant's Answer to Plaintiff's Complaint for Declaratory Judgment and Counterclaim as if fully set forth herein.

61.     AXIS and its agents and adjusters are liable to Defendants/Counter-

Plaintiffs for intentional breach of contract, as well as intentional violations of the Texas Insurance Code, Texas Deceptive Trade Practices Act, and beach of the duty of good faith and fair dealing.

## A. BREACH OF CONTRACT

62.     AXIS has committed acts which constitute a breach of the insurance contract made between AXIS and Defendants/Counter-Plaintiffs.

63.     AXIS' failure and refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question and under the laws of the State of Texas, constitutes a breach of AXIS's insurance contract with Defendants/Counter-Plaintiffs.  AXIS has failed to comply with its contractual obligations to Defendants/Counter-Plaintiffs and is in breach of contract. Defendants/Counter-Plaintiffs have suffered damages due to the failure to pay insurance policy proceeds to repair the damages which are a covered loss under the Policy.

64.     AXIS induced Defendants/Counter-Plaintiffs to enter into a contract with the intent of denying benefits in the event a claim was made.

## B. NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

65.     AXIS and its agents and adjusters' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices, Tex. Ins. Code §541.060(A). All violations under this article are made actionable by Tex. Ins. Code §541.151.

66.     AXIS and its agents and adjusters misrepresented to Defendants/Counter-Plaintiffs material facts relating to the coverage at issue, which constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(1).

67.    AXIS and its agents and adjusters failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though AXIS' liability under the Policy was reasonably clear, constituting an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(2)(A).

68.    AXIS and its agents and adjusters' unfairly failed to promptly provide Defendants/Counter-Plaintiffs with a reasonable explanation of the basis of the denial in the Policy, in relation to the facts or applicable law, or for their offer of a payment of less than the amount due which constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(3).

69.    AXIS and its agents and adjusters unfairly failed to, within a reasonable time, affirm or deny coverage of the claim to Defendants/Counter-Plaintiffs or to submit a reservation of rights to Defendants/Counter-Plaintiffs, which constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(4).

70.    AXIS and its agents and adjusters' refused to pay Defendants/Counter-Plaintiffs' claim without conducting a reasonable investigation, which constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(7).

### C. NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

71.    AXIS and its agents and adjusters committed multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by Tex. Ins. Code §542.060.

72.     AXIS and its agents and adjusters failed to acknowledge receipt of Defendants/Counter-Plaintiffs' claim, commence investigation of the claim, and request from Defendants/Counter-Plaintiffs all items, statements, and forms that they reasonably believed would be required within the applicable time constraints as described above. Such failure constitutes a non-prompt payment of claims and a violation of the Tex. Ins. Code §542.055.

73.     AXIS and its agents and adjusters failed to notify Defendants/Counter-Plaintiffs in writing of their acceptance or rejection of the claim within the applicable time constraints. Such failure constitutes a non-prompt payment of the claim. Tex. Ins. Code §542.056.

74.     AXIS and its agents and adjusters delayed the payment of Defendants/Counter-Plaintiffs' claim following their receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above. Such failure which constitutes a non-prompt payment of the claim. Tex. Ins. Code §542.058.

### D.  BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

75.     The actions of AXIS by and through its agents and adjusters while acting in the course and scope of their employment constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

76.     AXIS and its agents and adjusters' failed to adequately and reasonably investigate and evaluate Defendants/Counter-Plaintiffs' claim, although at that time AXIS and its agents and adjusters knew or should have known by the exercise of reasonable diligence that their liability was reasonably clear, constitutes a breach of the duty of good

faith and fair dealing.

77.     AXIS failed to afford equal consideration to the rights of Defendants/Counter-Plaintiffs as compared to itself.

78.     AXIS acted unreasonably in the processing, investigation and denial of Defendants/Counter-Plaintiff's claim. AXIS's conduct was knowing and intentional.

79.     There was no reasonable basis for denial of Defendants/Counter-Plaintiffs' claim, delay in payment to Defendants/Counter-Plaintiffs and failure to reasonably investigate. AXIS has actual knowledge of the unreasonable nature of its conduct and has forced Defendants/Counter-Plaintiffs to both defend and pursue litigation to recover the benefits to which they are due.

### E. VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES/CONSUMER PROTECTION ACT

80.     Based on the facts previously set forth, Plaintiff has committed violations of the Texas Deceptive Trade Practices/Consumer Protection Act, ("DTPA"). The DTPA, Sections 17.46, *et seq*. of the Texas Business and Commerce Code, provides additional protection to consumers who are victims of deceptive, improper, and/or illegal practices, including the award of treble damages for knowing violation and attorneys' fees.  Texas Business & Commerce Code §17.50 allows for recovery under the DTPA for the violation of Chapter 541 of the Texas Insurance Code. AXIS's conduct in engaging in such acts or practices results in actual and consequential damages to Defendants/Counter-Plaintiffs, and supports an award for treble damages.

81.     Defendants/Counter-Plaintiffs would respectfully show they are entitled to actual damages resulting from these violations of the law.  These damages include the sums AXIS has wrongfully refused to pay and any consequential damages to

Defendants/Counter-Plaintiffs' economic welfare in the future, including any exacerbation of economic condition occasioned by the delay in payment of these claims. Defendants/Counter-Plaintiffs are also entitled to recovery of treble damages for "knowing" violations.

82.    In addition, Defendants/Counter-Plaintiffs are entitled to recovery of attorneys' fees necessary to afford their rights, along with the costs and expenses set forth by law.

**F.  KNOWLEDGE**

83.    Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and Texas Deceptive Trade Practices Act and were a producing cause of Defendants/Counter-Plaintiffs' damages described herein.

84.    Defendants/Counter-Plaintiffs have complied with all conditions precedent in making their claims against Plaintiff. Defendants/Counter-Plaintiffs have complied with all conditions precedent to bring this litigation.

85.    To the extent any individual or entity took part in the investigation, processing, adjusting, delaying and denial of Defendants/Counter-Plaintiffs' claims, each did so while within the scope of their agency and employment of AXIS.

**XI.**
**DAMAGES**

86.    Defendants/Counter-Plaintiffs re-alleges and incorporates by reference the allegations contained in Paragraphs 1-85 of Defendant's Answer to Plaintiff's Complaint for Declaratory Judgment and Counterclaim as if fully set forth herein.

87.    Defendants/Counter-Plaintiffs would show that all of the aforementioned

acts, taken together or singularly, constitute the producing causes of the damages sustained by Defendants/Counter-Plaintiffs.

88.    As previously mentioned, the damages caused by this incident rendered Defendants/Counter-Plaintiffs' Property significantly damaged. These damages have not been properly addressed or repaired in the months since the structural damage occurred causing further damages to Defendants/Counter-Plaintiffs and causing undue hardship and burden to the Defendants/Counter-Plaintiffs. These damages are a direct result of AXIS's mishandling of Defendants/Counter-Plaintiffs' claims in violation of the law set forth above.

89.    For breach of contract, Defendants/Counter-Plaintiffs are entitled to regain the benefit of the bargain, which is the amount of their claim together with attorney's fees. Defendants/Counter-Plaintiffs seek monetary relief at least $2,828,928.08, plus their attorney's fees.

90.    For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Defendants/Counter-Plaintiffs are entitled to actual damages, which include the loss of the benefit that should have been paid pursuant to the Policy, consequential damages, court costs and attorneys' fees. For knowing conduct of the acts complained of, Defendants/Counter-Plaintiffs request three times their actual damages. Tex. Ins. Code §541.152. Defendants/Counter-Plaintiffs seek monetary relief over $8,486,784.24, in addition to court costs and attorneys' fees.

91.    For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Defendants/Counter-Plaintiffs are entitled to the amount of their claim, as well as eighteen (18) percent interest per annum of the amount of such claim as damages,

together with attorneys' fees. Tex. Ins. Code §542.060. Defendants/Counter-Plaintiffs seek monetary relief over $2,828,928.08 plus statutory interest.

92.    For beach of the common law duty of good faith and fair dealing, Defendants/Counter-Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurance breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional distress. Defendants/Counter-Plaintiffs seek monetary relief over $2,828,928.08.

93.    Additionally, for breach of the common law duty of good faith and fair dealing, Defendants/Counter-Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from AXIS's conduct in hindering the repair or reconstruction of Defendants' Property. Defendants/Counter-Plaintiffs seek monetary relief over $2,828,928.08.

94.    For breach of the Texas Deceptive Trade Practices Act. Defendants/Counter-Plaintiffs are entitled to recover from Plaintiff/Counter-Defendant. Defendants/Counter-Plaintiffs seek actual damages in the amount of $2,828,928.08, plus statutory damages, consequential damages, exemplary damages along with attorneys' fees.

## XII.
## ATTORNEYS' FEES

95.    Defendants/Counter-Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraphs 1-94 of Defendants/Counter-Plaintiffs' Answer to Plaintiff's Complaint for Declaratory Judgment and Counterclaim as if fully set forth herein.

96.    For the prosecution and collection of this claim, Defendants/Counter-

Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Defendants/Counter-Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Defendants/Counter-Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court.

## XIII.
## JURY DEMAND

97.     Defendants/Counter-Plaintiffs hereby request that all causes of action alleged herein be tried before a jury.

## XIV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants/Counter-Plaintiffs pray Plaintiff/Counter-Defendant AXIS be cited to answer and appear and after final trial, Defendants/Counter-Plaintiffs have judgment against the Plaintiff/Counter-Defendant declaring that there is coverage under the policy, and an award in an amount in excess of the minimal jurisdiction limit of the Court to reimburse them the cost of repairs of the Defendants/Counter-Plaintiffs' Property, diminution in value of the Defendants/Counter-Plaintiffs' Property, lost profit, loss of use, and other consequential damages, punitive or exemplary damages, plus pre-judgment and post-judgment interest at the legal rate until paid, attorneys' fees and costs, costs of Court, and for a judgment that all relief requested by Plaintiff/Counter-Defendant be denied, and for all other relief, at law and in equity, to which Defendants/Counter-Plaintiffs may be justly entitled.

Respectfully submitted,

**AYERS & AYERS**


By:    */s/ Jonathan P. Ayers*
        JONATHAN P. AYERS
        State Bar No. 01465900
        4205 Gateway Drive, Suite 100
        Colleyville, Texas 76034
        jayers@ayersfirm.com
        (817) 267-9009
        (817) 318-0663 (FAX)

        **ATTORNEYS FOR DEFENDANT**


**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this document was delivered via e-service through the Court's ECF System to all counsel of record on June 2, 2021, in accordance with Rule 5(b)(2) of the Federal Rules of Civil Procedure.

        */s/ Jonathan P. Ayers*
        Jonathan P. Ayers